UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In Re:

YANITZA HERNANDEZ                                         Case No. 13-36351-LMI

    Debtor                                                                Chapter 13

_____/

## MOTION FOR RELIEF FROM CO-DEBTOR STAY AS TO
## EVANGELINA L. BELLO MARTINEZ

By and through its undersigned counsel, Phelan Hallinan, PLC, CitiMortgage, Inc. ("Movant"), its successors and/or assigns, a secured creditor of the above-referenced Debtor, hereby moves the Court for an Order granting relief from Co-debtor stay pursuant to 11 U.S.C. §1301(c) and states:

1. This Court has jurisdiction over these matters pursuant to 28 U.S.C. §1334 and 28 U.S.C. §157(b)(2)(G) and §1301(c).

2. On October 31, 2013, the Debtor filed a Voluntary Petition under Chapter 13 of the Bankruptcy Code.

3. The property located at 711 EAST 46 ST, HIALEAH, FL 33013 (hereinafter, the "Property") is legally described as follows:

> **LOT 29 AND 30, BLOCK 53-F, OF SIXTEENTH ADDITION TO HIALEAH, ACCORDING TO THE PLAT THEREOF, AS RECORDED IN THE PLAT BOOK 10, PAGE 53, OF THE PUBLIC RECORDS OF MIAMI-DADE COUNTY, FLORIDA**

4. Movant is the holder of the Note Secured by the Mortgage encumbering the property claimed by the Debtor to be part of the bankruptcy estate and is a party in interest in this bankruptcy proceeding.

5. On May 21, 2009, the Debtor, Yanitza Hernandez, and non-filing Co-debtors, Luilly R Hernandez, Antonio Hernandez and Evangelina L. Bello Martinez, executed a Promissory Note in the principal amount of $186,558.00 (herein, the "Note"). A copy of the Note is attached as Composite Exhibit "A" and incorporated by reference.

6. The Note was secured by a Mortgage which was recorded as Book 26886, Page 2439 on June 2, 2009. A copy of the Mortgage is attached as Composite Exhibit "A" and incorporated by reference.

7. Debtor has defaulted under the terms of the Note and Mortgage by failing to timely tender the payments as they became due. The Debtor's loan is currently contractually due for December 1, 2013.

8. The post-petition payment address of the Movant is: PO Box 688971, Des Moines, IA 50368-8971.

9. The Debtor is currently in default post-petition for the December 1, 2013 through April 1, 2015 regular monthly payments. The monthly payment amount for the months of December 1, 2013 through January 1, 2014 is $1,704.04, payment amount for the months of February 1, 2014 through January 1, 2015 is $1,686.20 and payment amount for the months of February 1, 2015 through April 1, 2015 is $1700.42, for a total post-petition default in the amount of $28,743.74.

10. Debtor has little or no equity in the Property based upon Schedule "A" which provide that the property value is $190,775.00.

11. Cause exists to terminate the Co-debtor stay with respect to the Property namely lack of adequate protection, lack of equity, and the Property is not necessary for an effective reorganization.

12. Movant requests a waiver of the fourteen (14) day stay under Rule 4001(a)(3) of the Order granting Co-debtor relief so that Movant may pursue *in rem* remedies without further delay.

13. Movant is entitled to adequate protection of its interests in the subject real property and Movant prays for entry of an Order granting relief from the Co-debtor stay of 11 U.S.C. §1301(c) to permit Movant to proceed with its state court rights.

WHEREFORE, Movant requests that this Court modify the stay under 11 U.S.C. §1301 (c) and permit it to proceed with its State Court rights under the terms of the Mortgage and Note, requests that the fourteen-day extension of the stay under Rule 4001(a)(3) be waived, and requests such additional relief as is just.

I hereby certify that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this court set forth in Local Rule 2090-1(A).

/s/ Steven Gaddy, Esquire
Steven Gaddy, Esq., Florida Bar No. 0108044
Phelan Hallinan, PLC
2727 West Cypress Creek Road
Ft. Lauderdale, FL 33309
Tel: 954-462-7000 Ext.
Fax: 954-462-7001
Email:
FLSD.bankruptcy@phelanhallinan.com

PH # 60291                                3

UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

In Re:

YANITZA HERNANDEZ                                              Case No. 13-36351-LMI

    Debtor                                                              Chapter 13

_____/

## CERTIFICATE OF SERVICE

The undersigned counsel for Creditor CitiMortgage, Inc. hereby certifies that a true copy of the Motion for Relief from Co-debtor Stay and Exhibits attached to the Motion for Relief from Co-debtor Stay were sent either electronically or by U.S. Mail on April 27, 2015 to each of the following parties:

YANITZA HERNANDEZ  
711 E 46TH STREET  
HIALEAH, FL 33013-1947

EVANGELINA L. BELLO MARTINEZ  
711 EAST 46 ST  
HIALEAH, FL 33013

ROBERT SANCHEZ, ESQ  
355 W 49 ST.  
HIALEAH, FL 33012

NANCY K. NEIDICH, (TRUSTEE)  
POB 279806  
MIRAMAR, FL 33027

Dated: April 27, 2015

                                  /s/ Steven Gaddy, Esquire  
                                Steven Gaddy, Esq., Florida Bar No. 0108044  
                                Phelan Hallinan, PLC  
                                2727 West Cypress Creek Road  
                                Ft. Lauderdale, FL 33309  
                                Tel: 954-462-7000 Ext.  
                                Fax: 954-462-7001  
                                FLSD.bankruptcy@phelanhallinan.com

PH # 60291                                 4

# Exhibit "A"



MIN: ███████████  **NOTE**  Loan Number: ███████

FHA Case No.
████████████

| MAY 21, 2009 | BOCA RATON | FLORIDA |
|---|---|---|
| [Date] | [City] | [State] |

711 EAST 46 ST, HIALEAH, FLORIDA 33013
[Property Address]

### 1. PARTIES
"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means WCS LENDING, LLC, A FLORIDA LIMITED LIABILITY COMPANY
and its successors and assigns.

### 2. BORROWER'S PROMISE TO PAY; INTEREST
In return for a loan received from Lender, Borrower promises to pay the principal sum of ONE HUNDRED EIGHTY-SIX THOUSAND FIVE HUNDRED FIFTY-EIGHT AND 00/100 Dollars (U.S. $ 186,558.00     ), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of FIVE AND 500/1000                                                       percent (     5.500 %) per year until the full amount of principal has been paid.

### 3. PROMISE TO PAY SECURED
Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

### 4. MANNER OF PAYMENT
(A) Time
Borrower shall make a payment of principal and interest to Lender on the 1st day of each month beginning on JULY 1, 2009         . Any principal and interest remaining on the 1st day of JUNE, 2039         , will be due on that date, which is called the "Maturity Date."

(B) Place
Payment shall be made at 6501 CONGRESS AVENUE, 3RD FLOOR, BOCA RATON, FLORIDA 33487           .
, or at such other place as Lender may designate in writing by notice to Borrower.

(C) Amount
Each monthly payment of principal and interest will be in the amount of U.S. $ 1,059.26    .
This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

FLORIDA - FHA FIXED RATE NOTE
FLFHA.NTE 05/01/08                          Page 1 of 3                  DocMagic *eFormns* 800-649-1362
                                                                                   www.docmagic.com

*AH  YH  LH*

**(D) Allonge to this Note for Payment Adjustments**

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note.

(Check applicable box.)

☐ Growing Equity Allonge
☐ Graduated Payment Allonge
☐ Other [specify]:

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

## 6. BORROWER'S FAILURE TO PAY

**(A) Late Charge for Overdue Payments**

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of FOUR AND 000/1000                          percent (     4.000  %) of the overdue amount of each payment.

**(B) Default**

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances, regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

**(C) Payment of Costs and Expenses**

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

FLORIDA - FHA FIXED RATE NOTE
FLFHA.NTE  05/01/08                          Page 2 of 3                    DocMagic eForms 800-649-1362
                                                                                www.docmagic.com

*AH   YH   LH*

### 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

_____ (Seal)
YANITZA HERNANDEZ             -Borrower

_____ (Seal)
ANTONIO HERNANDEZ             -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
LUILLY R HERNANDEZ            -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

*[Sign Original Only]*

FLORIDA - FHA FIXED RATE NOTE
FLFHA.NTE 05/01/08                   Page 3 of 3                   DocMagic eForms 800-649-1362
                                                                   www.docmagic.com

# ALLONGE TO NOTE

**Loan Number:** ▮▮▮▮▮

**Loan Date:** MAY 21, 2009

**Borrower(s):** YANITZA HERNANDEZ, LUILLY R HERNANDEZ, ANTONIO HERNANDEZ

**Property Address:** 711 EAST 46 ST
HIALEAH, FLORIDA 33013

**Principal Balance:** $186, 558.00

**Without recourse, pay to the order of**

CitiMortgage, Inc.

Company Name: WCS LENDING, LLC, A FLORIDA LIMITED LIABILITY COMPANY

By: *Melissa Poitier* (signature)
Melissa Poitier        Closing Manager

```
CFN 2009R0396979
OR Bk 26886 Pgs 2439 - 2448; (10pgs)
RECORDED 06/02/2009 10:52:30
MTG DOC TAX 653.10
INTANG TAX 373.12
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
```

This Instrument Prepared By:

MARIA MARTINEZ

After Recording Return To:
WCS LENDING, LLC
6501 CONGRESS AVENUE, 3RD FLOOR
BOCA RATON, FLORIDA 33487
Loan Number: ▮▮▮▮

[Space Above This Line For Recording Data]

# MORTGAGE

FHA CASE NO.

MIN: ▮▮▮▮

THIS MORTGAGE ("Security Instrument") is given on MAY 21, 2009    *wife and husband*
The mortgagor is YANITZA HERNANDEZ AND LUILLY R HERNANDEZ AND ANTONIO
HERNANDEZ, TENANTS IN COMMON
*, a married man, joined by his spouse, Evangelina L.*
("Borrower"). *Bello*
This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") as Mortgagee. MERS
is the nominee for Lender, as hereinafter defined, and Lender's successors and assigns. MERS is organized and *Martinez*
existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-
2026, tel ▮▮▮▮ MERS.
WCS LENDING, LLC, A FLORIDA LIMITED LIABILITY COMPANY    ("Lender")
is organized and existing under the laws of FLORIDA
and has an address of 6501 CONGRESS AVENUE, 3RD FLOOR, BOCA RATON,
FLORIDA 33487
Borrower owes Lender the principal sum of ONE HUNDRED EIGHTY-SIX THOUSAND FIVE
HUNDRED FIFTY-EIGHT AND 00/100    Dollars (U.S. $ 186,558.00    ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on JUNE 1, 2039    .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants
and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant
and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and
assigns of MERS the following described property located in MIAMI-DADE    County, Florida:
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 04-3105-010-1810

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA 11/01/08                Page 1 of 9              DocMagic *e*Forms 800-649-1362
                                                              www.docmagic.com

*AH    YH    LH*

which has the address of   711 EAST 46 ST
                                                    [Street]
                HIALEAH          , Florida    33013        ("Property Address"):
                [City]                        [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

2. **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. § 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA 11/01/08                      Page 2 of 9                    DocMagic *eFormos* 800-649-1362
                                                                        www.docmagic.com

*AH   YH   LH*

remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

3. **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:
FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;
SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;
THIRD, to interest due under the Note;
FOURTH, to amortization of the principal of the Note; and
FIFTH, to late charges due under the Note.

4. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

5. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA 11/01/08                    Page 3 of 9                    DocMagic eForms 800-649-1362
                                                                      www.docmagic.com

*AH  VH CH*

leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

6. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

7. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**

    (a) **Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

    (b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA 11/01/08                Page 4 of 9                DocMagic *eForms* 800-649-1362
                                                              www.docmagic.com

*AH  VH  LH*

Book26886/Page2442    CFN#                                    Page 4 of 10

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 DAYS from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 DAYS from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

10. **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

11. **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

12. **Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

13. **Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA 11/01/08                    Page 5 of 9                    DocMagic eForms 800-649-1362
                                                                      www.docmagic.com

AH   VH   LH

to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

14. **Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

15. **Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

16. **Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

17. **Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

18. **Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses**

*AH   VH   LH*

incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

19. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

20. **Attorneys' Fees.** As used in this Security Instrument and the Note, attorneys' fees shall include those awarded by an appellate court and any attorneys' fees incurred in a bankruptcy proceeding.

21. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check applicable box(es)].

☐ Condominium Rider            ☐ Graduated Payment Rider     ☐ Growing Equity Rider
☐ Planned Unit Development Rider  ☐ Adjustable Rate Rider     ☐ Rehabilitation Loan Rider
☐ Non-Owner Occupancy Rider    ☐ Other [Specify]

[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA  11/01/08                Page 7 of 9                DocMagic *eFormns* 800-649-1362
                                                                www.docmagic.com

*PH   YH CH*

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 9 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

_____ (Seal)
YANITZA HERNANDEZ        -Borrower
711 EAST 46 ST, HIALEAH,
FLORIDA 33013

_____ (Seal)
LUILLY R HERNANDEZ       -Borrower
711 EAST 46 ST, HIALEAH,
FLORIDA 33013

_____ (Seal)
ANTONIO HERNANDEZ        -Borrower
711 EAST 46 ST, HIALEAH,
FLORIDA 33013

_____ (Seal)
                         -Borrower

_____ (Seal)
Evangelina L. Bello Martinez -Borrower

_____ (Seal)
                         -Borrower

Witness:
Juan Galera

Witness:
Maribel Perez

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA 11/01/08

Page 8 of 9

DocMagic eForms 800-049-1362
www.docmagic.com

———————————— [Space Below This Line For Acknowledgment] ————————————

STATE OF FLORIDA

COUNTY OF DADE

The foregoing instrument was acknowledged before me this __21__ day of __May, 2009__

by __YANITZA HERNANDEZ AND LUILLY R HERNANDEZ AND ANTONIO HERNANDEZ__ and Evangelina L Bello Martinez

who is personally known to me or who has produced __driver's licenses.__
(Type of Identification)

as identification.

Maribel Pena
Commission # DD602701
Expires October 5, 2010
Bonded Troy Fain Insurance, Inc. 800-385-7019

_____
Signature

_____
Name of Notary

_____
Title: Notary

(Seal)

_____
Serial Number, if any

FHA FLORIDA MORTGAGE - MERS
FLMTGZ.FHA 11/01/08            Page 9 of 9            DocMagic eForms 800-649-1362
                                                      www.docmagic.com

## Exhibit "A"

Legal Description for File No.: 081202SS

Lots 29 and 30, Block 53-F, of SIXTEENTH ADDITION TO HIALEAH, according to the Plat thereof, as recorded in Plat Book 10, Page 53, of the Public Records of Miami-Dade County, Florida

File No. 090209IS

```
CFN  2014R0120878
OR Bk 29033 Ps 3542; (1ps)
RECORDED 02/18/2014 11:12:48
HARVEY RUVIN, CLERK OF COURT
MIAMI-DADE COUNTY, FLORIDA
LAST PAGE
```

Return to :
CT LIEN SOLUTIONS
PO BOX 29071
GLENDALE , CA 91209-9071

Prepared By:
CITIMORTGAGE, INC
Gillian Howard
1000 TECHNOLOGY DRIVE, MS 321
O'FALLON, MO 63368-2240

## ASSIGNMENT OF MORTGAGE

FOR VALUE RECEIVED, Mortgage Electronic Registration Systems, Inc. as nominee for WCS Lending, LLC its successors and assigns (Assignor), hereby assigns and transfers to CitiMortgage, Inc. , whose address is 1000 Technology Drive, O'Fallon, MO, 63368 (Assignee), all its right and interest in and to that certain Mortgage executed by Yanitza Hernandez, Luilly R Hernandez, Antonio Hernandez and Evangelina L Bello Martinez , and dated 05/21/2009 and Originally Recorded on: 06/02/2009 in the Official Records of Miami-Dade (formerly Dade) County , State of Florida under Book: 26886 Page: 2439 Instrument No: 2009R0396979, encumbering the property more particularly described as follows:

Description/Additional information: Lots 29 and 30, Block 53-F, of SIXTEENTH ADDITION TO HIALEAH, according to the Plat thereof, as recorded in Plat Book 10, Page 53, of the Public Records of Miami Dade County, Florida.

Dated: 1/30/14

Mortgage Electronic Registration Systems, Inc. as nominee for WCS Lending, LLC its successors and assigns

By _____
Name Gillian M. Howard
Assistant Secretary

Witness Shannon E. Wallace

Witness Helene E. Robinson

STATE OF **MISSOURI, ST. CHARLES COUNTY**

On  1/30/14  before me, the undersigned, a notary public in and for said state, personally appeared **Gillian M. Howard, Assistant Secretary** of **Mortgage Electronic Registration Systems, Inc. as nominee for WCS Lending, LLC its successors and assigns** personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he/she executed the same in his/her capacity, and that by his/her signature on the instrument, the individual, or the person upon behalf of which the individual acted, executed the instrument.

```
SHEILA BROOKS
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: March 19, 2016
Commission Number: 12316673
```

Notary Public **Sheila Brooks**

Commission Expires: 03/19/2016